IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MYRTHA COLETTE, | Civil Action No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| JP MORGAN CHASE & CO., | |
| Defendant. | |

## **COMPLAINT FOR DAMAGES**

COMES NOW, Plaintiff Myrtha Colette ("Plaintiff" or "Ms. Colette"), by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 15(a)(1)(A) and files this Complaint for Damages against Defendant JP Morgan Chase & Co. ("Defendant" or "Chase"), and shows the Court as follows:

## **NATURE OF COMPLAINT**

1.

This action is brought to remedy employment discrimination and retaliation on the basis of sex (female), age (61), national origin (Haitian) and disability (herniated disc) in the terms, conditions and privileges of employment in violation of: (a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et

seq. ("Title VII") for gender/sex discrimination and retaliation; (b) the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA") for age and retaliation; and (c) the Americans With Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 et seq. ("ADAA") for disability and retaliation.

## ADMINISTRATIVE PROCEDURES

2.

Ms. Colette has fulfilled all conditions necessary to proceed with this cause of action under Title VII.

3.

Ms. Colette filed her charge of discrimination on the basis of age, disability, national origin, and retaliation against the Defendant with the EEOC on March 27, 2017.

4.

Ms. Colette filed her amended charge of discrimination on or about September 7, 2018.

5.

The EEOC issued its Notice of Right to Sue on September 28, 2018.

6.

Ms. Colette timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## JURISDICTION AND VENUE

7.

Ms. Colette invokes the jurisdiction of this court pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

8.

In accordance with 28 U.S.C. § 1391 and 42 U.S.C. § 2117(a), venue is appropriate in this Court.

9.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391(b)(2) and 42 U.S.C. §2000(e)-5(f)(3), venue is appropriate in this Court.

## PARTIES

10.

Ms. Myrtha Colette is a citizen of the United States and subject to the jurisdiction of this Court.

11.

Ms. Colette is an "employee" within the meaning of Section 1981.

12.

Defendant Chase is a foreign company qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

13.

Defendant Chase is an "employer" as defined by Section 1981.

14.

Defendant Chase is now, and at all times relevant hereto, has been an employer engaged in an industry affecting commerce within the meaning of §701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h), and has employed more than the requisite number of persons for the requisite duration under Title VII.

15.

Defendant Chase may be served with process by delivering a copy of the summons and complaint to their Corporate Registered Agent, CT Corporation System, 289 S. Culver St., Lawrenceville, Gwinnett County, Georgia 30046-4805.

## **FACTUAL ALLEGATIONS**

### 16.

Ms. Colette was employed with the Bank of New York as a Teller in Port Washington, New York, from 1984 through 2006.

### 17.

In 2006, Ms. Colette's employer, Bank of New York, was acquired by Defendant Chase. Colette remained employed as a Teller for Chase following the acquisition.

### 18.

In July 2013, Ms. Colette was transferred from her New York Chase branch to a Chase branch in Snellville, Georgia as a Senior Teller. Ms. Colette retained her pay grade in the transfer.

### 19.

In 2014, Ms. Colette received an award from Defendant Chase for 30 years of loyal service with Chase.

### 20.

Ms. Colette's manager at Chase in Georgia was James Blackmon.

21.

Mr. Blackmon often made statements to Ms. Colette about her national origin, which was Haitian, and constantly disparaged her due to her accent.

22.

Mr. Blackmon would criticize Ms. Colette if she spoke French to French-speaking customers.

23.

Mr. Blackmon repeatedly told Ms. Colette that she was an "expensive" employee because of her higher pay grade, often in front of her co-workers.

24.

Mr. Blackmon said to Ms. Colette that her pay grade affected his yearly bonus.

25.

Ms. Colette would be called into Mr. Blackmon's office for minor infractions, while obvious infractions of her co-workers were ignored by management.

26.

Mr. Blackmon would tell Ms. Colette to stand up straight if he saw her leaning on any wall or counter, while her co-workers were never scorned for doing the same thing.

27.

Ms. Colette had a record of a disability with Defendant Chase as early as 2008, when she had a herniated disc and was out of work for an extended time.

28.

Ms. Colette's disability was aggravated in 2014 by a fall at a grocery store. The fall caused a diffuse disc bulging at the L3-4 and L4-5 lumbar spine.

29.

Ms. Colette also suffered a right knee injury and had a history of diabetes, high blood pressure, and asthma contributing to her disability.

30.

In November 2015, Ms. Colette's physician ordered Ms. Colette to light duty on the job to minimize aggravation of her disability, such as limited lifting of items less than 20 pounds and no squatting or bending.  Her doctor also recommended that she sit for at least five (5) minutes per hour of an eight–ten (8-10) hour day, beginning November 18, 2015, until approximately March 2016, to be confirmed with a clinical follow up.

31.

Despite her record of disability with Defendant Chase, Ms. Colette was required by Mr. Blackmon to perform job duties outside of her disability limitations.

32.

Ms. Colette was required to perform such duties as the teller case dispenser "TCD," which required heavy lifting of cannisters into the machine.

33.

When performing the "TCD" tasks, Ms. Colette would wear a back brace, use a stool, and take pain relief medication.

34.

Ms. Colette complained to Mr. Blackmon and Assistant Branch Manager, Ms. Natasha Davis, that the TCD task was difficult without accommodation or assistance.

35.

Mr. Blackmon would reprimand Ms. Colette by constantly telling her that she was taking too long and to hurry up.

36.

Ms. Colette's co-workers would often try to help her with the TCD task, specifically lifting the cannisters into the machine.

37.

Mr. Blackmon would scold anyone for stopping to help Ms. Colette load the cannisters into the machine.

38.

In 2015 or 2016, Mr. Blackmon had Ms. Colette meet with a financial advisor to discuss future plans about retirement.  This advisor asked personal questions that made Ms. Colette uncomfortable.

39.

Ms. Colette was given the impression by Mr. Blackmon that all employees were meeting with the financial advisor. Ms. Colette later learned that she was the only employee that met with the advisor.

40.

In June 2016, Mr. Blackmon's boss, the Regional Manager Denise Horvath, interviewed the Chase staff at Ms. Colette's branch regarding the complaints of Mr. Blackmon.

41.

In the June 2016 interview, Ms. Colette reported to Denise Horvath that she was being targeted and unfairly treated by Mr. Blackmon.

42.

Following the report of Mr. Blackmon's disparate and discriminatory treatment, Denise Horvath told Ms. Colette to contact her if Blackmon retaliated following her report.

43.

The same day of Denise Horvath's investigation, Mr. Blackmon was sent home and subsequently took a leave of absence.

44.

On or about July 1, 2016, Mr. Blackmon took a leave of absence from Defendant Chase until March 31, 2017. However, Blackmon was on premises on two occasions during his leave.

45.

Approximately two weeks after her complaint to Denise Horvath, Ms. Colette was called into a meeting with Human Resources.

46.

After Mr. Blackmon's leave of absence, Assistant Branch Manager Natasha Davis took over the branch management for some time.

47.

Following Ms. Davis's transfer from the branch, the branch was then managed by Branch Managers Nikki Jones and LaDonna Murphy, who were Branch Managers at other Defendant branch locations.

10

48.

On or about August 23, 2016, two months after a June 28, 2016 fraud incident involving Ms. Colette, Ms. Davis was directed to issue Ms. Colette a first written warning for violation of Chase policy related to the June incident.

49.

Ms. Colette disputed the incident and refused to sign the written warning.

50.

During this same meeting, Ms. Colette reported to Ms. Davis that the duties of TCD custodian continued to cause her difficulty because of her disability.

51.

As a result of the written warning, Ms. Colette was placed on a restriction period until October 22, 2016.

52.

On or about September 7, 2016, Ms. Colette again disputed the August 23, 2016 written warning with Human Resources.

53.

Around September 2016, Ms. Jones asked Ms. Colette to submit updated medical documentation to obtain the accommodation requested.

54.

On or about September 14, 2016, Defendant Chase accused Ms. Colette of poor performance based on a customer complaint.   Ms. Colette denied the interaction.

55.

Ms. Colette was not issued a written warning for the September 14, 2016 alleged complaint.

56.

On or about September 15, 2016, Defendant Chase accused Ms. Colette for failing to ship out cash, causing overage of cash in the bank vault, which was a violation of policy and procedure. Ms. Colette denied the procedure was under her duty at that time.

57.

Ms. Colette was not issued a written warning for the September 15, 2016 alleged incident.

58.

On or about September 22, 2016, Ms. Colette provided Defendant Chase with updated medical documentation requesting an accommodation of light duty.

59.

Around September 30, 2016, Defendant Chase terminated Ms. Colette from her employment, citing unsatisfactory performance, including ongoing failure to follow policies and procedures.

60.

Defendant Chase terminated Ms. Colette, which denied her the opportunity to retire and be eligible for the maximum pension available.

61.

On or about October 4, 2016, Ms. Colette contacted Defendant Chase Human Resources to dispute her termination and deny the allegations once again.

62.

When Ms. Colette applied for unemployment benefits, Defendant falsely represented to the Department of Labor that Ms. Colette had retired.

63.

Defendant Chase discriminated against Ms. Colette because of her age, race/color, national origin, and disability.

64.

Although Defendant Chase purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text as shown by Defendant's actions.

65.

Others outside of the Ms. Colette's protected classification were treated preferably.

## CLAIMS FOR RELIEF

## COUNT I:  AGE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED (ADEA)

66.

Ms. Colette re-alleges the preceding paragraphs as if set forth fully herein.

67.

Ms. Colette is over the age of 40.

68.

At the time Defendant terminated Ms. Colette's employment, she was approximately 60 years old.

69.

Defendant's supervisory employees made derogatory and discriminatory comments about Ms. Colette's age.

14

70.

Defendant's supervisory employees harassed and singled-out Ms. Colette by exemplifying her to be an individual whose age made her incapable of keeping up with her job duties.

71.

Defendant pressured Ms. Colette to move faster and to speed up in her work tasks.

72.

Defendant's supervisory employees pressured Ms. Colette about retirement.

73.

Defendant repeatedly targeted and embarrassed Ms. Colette in front of her co-workers because she was a senior teller and was paid more due to her seniority, which Defendant stated made her too "expensive."

74.

Defendant terminated Ms. Colette's employment, in whole or in part, because of her age.

75.

Others outside of Ms. Colette's protected classes were treated differently.

76.

Defendant's actions in subjecting Ms. Colette to different terms and conditions of employment based on her age constitutes unlawful discrimination in violation of the ADEA, as amended.

77.

Defendant has willfully and wantonly disregarded Ms. Colette's rights, and Defendant's discrimination against Colette was undertaken in bad faith.

78.

The effect of the conduct was to deprive Ms. Colette of equal employment opportunity, and otherwise adversely affect Ms. Colette's status as an employee because of her age.

79.

As a direct and proximate result of these actions, Ms. Colette has been made a victim of acts that adversely affected her psychological and physical well being, as well as causing lost compensation and benefits.

80.

Pursuant to the ADEA, Ms. Colette is entitled to damages, including but not limited to back pay and lost benefits, reinstatement, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADEA.

## COUNT II:  RETALIATION IN VIOLATION OF THE ADEA

81.

Ms. Colette re-alleges the preceding paragraphs as if set forth fully herein.

82.

Ms. Colette engaged in protected activity when she complained about age discrimination and retaliation.

83.

Defendant retaliated against Ms. Colette by subjecting her to disciplinary actions as a result of Colette's protected activity.

84.

Defendant retaliated against Ms. Colette by terminating her employment as a result of Colette's protected activity.

85.

Defendant's proffered reason for terminating Ms. Colette's employment is a pretext designed to hide its retaliatory motive.

86.

Defendant's retaliatory actions against Ms. Colette were in violation of the ADEA.

87.

Defendant willfully and wantonly disregarded Ms. Colette's rights, and its retaliation against Colette was undertaken in bad faith.

88.

As a result of Defendant's retaliatory actions against Ms. Colette, Ms. Colette has suffered lost compensation and benefits.

89.

Pursuant to the ADEA, Ms. Colette is entitled to damages, including but not limited to back pay and lost benefits, reinstatement, equitable relief, attorneys' fees, costs of litigation, and all other relief recoverable under the ADEA.

## COUNT III: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT ("ADA") (DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATION)

90.

Ms. Colette repeats and re-alleges the preceding paragraphs as if set forth fully herein.

91.

Section 102 of the ADA protects qualified individuals, including Ms. Colette, from adverse employment actions based on a known disability of the employee.

92.

At all times relevant to this action, Ms. Colette was a "qualified individual" as that term is defined by the ADA.

93.

At all times relevant to this action, Ms. Colette was an individual with a "disability" as that term has been defined by the ADA.

94.

At all times relevant to this action, Defendant and individuals involved in the decision to terminate Ms. Colette were aware of Ms. Colette's disabilities, including at the time of Defendant's termination of Ms. Colette.

95.

Ms. Colette's disability and/or need for a reasonable accommodation were determinative factors in Defendant's decision to terminate Colette.

96.

At all times relevant to this action, Ms. Colette could perform the essential functions of her position, with or without a reasonable accommodation.

97.

Defendant "regarded" Ms. Colette as having a "disability" under the ADA.

98.

Ms. Colette had a record of having a disability such that she is a person with a "disability" within the meaning of the ADA, as amended.

99.

In terminating Ms. Colette, Defendant discriminated against Colette because of her disabilities, and/or need for an accommodation, thus violating Ms. Colette's rights under the ADA entitling her to all appropriate relief thereunder.

100.

In terminating Ms. Colette after she sought a reasonable accommodation, Defendant retaliated against Ms. Colette in violation of the ADA.

101.

As a result of Defendant's unlawful actions, Ms. Colette has suffered emotional distress and other non-pecuniary damages, as well as economic damages, for which she is entitled to recover from Defendant.

102.

Defendant acted with malice and in reckless indifference to Ms. Colette's federally-protected rights.  Ms. Colette is therefore entitled to punitive damages.

103.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text for disability discrimination.

104.

Defendant treated other employees outside Ms. Colette's protected class differently.

105.

Defendant's actions in subjecting Ms. Colette to different terms and conditions of employment constitutes unlawful discrimination in violation of the Americans with Disabilities Act of 1990, as amended.

106.

Defendant has willfully and wantonly disregarded Ms. Colette's rights, and Defendant's discrimination against Ms. Colette was undertaken in bad faith.

107.

The effect of the conduct complained of herein has been to deprive Ms. Colette of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

108.

As a direct and proximate result Defendant's violation of the ADA, Ms. Colette has been made the victim of acts that have adversely affected her psychological and physical well-being.

109.

As a result of Defendant's discriminatory actions against Ms. Colette, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

110.

Pursuant to the ADA, as amended, Ms. Colette is entitled to damages, including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

## COUNT IV: NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

111.

Ms. Colette re-alleges the preceding paragraphs as if set forth fully herein.

112.

Defendant's actions in subjecting Ms. Colette to different terms and conditions of employment constitutes unlawful discrimination on the basis of her national origin (Haitian) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

113.

Defendant has willfully and wantonly disregarded Ms. Colette's rights, and Defendant's discrimination against Colette was undertaken in bad faith.

114.

The effect of the conduct complained of herein has been to deprive Ms. Colette of equal employment opportunity and has otherwise adversely affected her status as an employee because of her national origin.

115.

As a direct and proximate result of Defendant's violation of Title VII, Ms. Colette has been made the victim of acts that have adversely affected her psychological and physical well-being.

116.

Defendant, therefore, is liable for the damages caused proximately by its discrimination.

## COUNT IV: RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

117.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

118.

Plaintiff is of Haitian descent and black in color.

119.

Title VII prohibits Defendant from discriminating against Plaintiff on the basis of race and/or color.

120.

Defendant violated Plaintiff's rights under Title VII by subjecting her to a hostile environment and adverse employment actions, because of her race and/or color, materially affecting the terms and conditions of Plaintiff's employment.

121.

Defendant intentionally discriminated against Plaintiff on the basis of Plaintiff's race and/or color in violation of Title VII.

122.

Defendant treated Plaintiff differently than other employees outside of Plaintiff's protected race class. Any alleged non-discriminatory reason given by Defendant for treating Plaintiff differently than employees outside of Plaintiff's protected race class is pretext for unlawful discrimination.

123.

As a direct and proximate result of Defendant's actions and omissions, Plaintiff has suffered damages, including emotional distress, humiliation and other indignities.

124.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's actions toward Plaintiff were undertaken in bad faith

125.

The acts and omissions of Defendant were willful, malicious and in reckless disregard of Plaintiff's federally-protected rights entitling Plaintiff to an award of punitive damages.

126.

Defendant is liable for the damages caused by its discrimination against Plaintiff.

## COUNT V:  RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (ENGAGING IN PROTECTED ACTIVITY WITH DEFENDANT)

127.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

128.

Plaintiff engaged in protected activity under Title VII.

129.

Defendant subjected Plaintiff to adverse action (to wit, termination) because of Plaintiff's protected conduct. The adverse action to which Plaintiff was subjected would dissuade a reasonable employee from making or supporting a charge of discrimination.

130.

There was a causal connection between the protected conduct and the adverse action of termination.

131.

As a direct and proximate result of Defendant's violations, Plaintiff has suffered economic and non-pecuniary damages.

132.

Defendant willfully and wantonly disregarded Plaintiff's rights, and its actions toward Plaintiff were undertaken in bad faith.

133.

Plaintiff is entitled to punitive damages, lost wages and benefits, compensatory damages, attorneys' fees and costs, prejudgment interest, reinstatement or front pay in lieu thereof, and any other relief available under the law.

## COUNT VI:  DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981

134.

Ms. Colette re-alleges the preceding paragraphs as if set forth fully herein.

42 U.S.C. § 1981 prohibits Defendants from discriminating against Plaintiff on the basis of race with regard to the making and enforcing of her employment with Defendants.

135.

Defendants violated Plaintiff' s rights under 42 U.S.C. § 1981.

136.

Plaintiff is a member of a protected class.

137.

Plaintiff is of Haitian descent and black in color.

138.

Plaintiff was subjected to severe, pervasive and racial harassment because of her race.

139.

Defendant's failure to stop unlawful discrimination against Ms. Colette, and subsequent termination of employment, were motivated by Ms. Collete's race, color, and Haitian origin.

140.

Defendant would not have taken those discriminatory actions described above but for Defendant's unlawful motives.  The reasons provided by Defendant are false and a pretext for unlawful discrimination.

141.

As a result of Defendant's unlawful racial discrimination in violation of 42 U.S.C. § 1981, Ms. Colette has suffered damages.

142.

Defendant's discriminatory actions were willful, malicious, and carried out with a reckless disregard for Ms. Colette's rights under federal law.

143.

As a direct and proximate result of Defendant's violations of 42 U.S.C. § 1981, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

144.

As a direct and proximate result of the discrimination described above, Ms. Colette has suffered loss of employment, loss of income, loss of other employment benefits, mental anguish, distress, humiliation, expense, and loss of enjoyment of life.

**WHEREFORE**, Ms. Colette respectfully prays for relief as follows:

(a)	General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)	Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c)	Special damages and/or liquidated damages for lost wages and benefits;

(d)	Damages for breach of contract;

(e)	Reasonable attorney's fees and expenses of litigation;

(f)	Trial by jury as to all issues;

(g)	Prejudgment interest at the rate allowed by law;

(h)	Declaratory relief to the effect that Defendant has violated Ms. Colette's statutory rights;

(i)	Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(j)	All other relief to which he may be entitled.

Respectfully submitted this 26th day of December 2018.

**BARRETT & FARAHANY**

s/Sheri Bagheri
Sheri Bagheri
Georgia Bar No. 174460
*Attorney for Plaintiff Myrtha Colette*

1100 Peachtree Street, N.E., Suite 500
Atlanta, Georgia 30309
(404) 214-0120
(404) 214-0125 (*facsimile*)
sheri@justiceatwork.com