**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **MYRTHA COLETTE,** | ) | |
| | ) | |
|    **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION FILE** |
| **v.** | ) | |
| | ) | **NO. 1:18-CV-05865-JPB-AJB** |
| **JPMORGAN CHASE BANK, N.A.,** | ) | |
| | ) | |
|    **Defendant.** | ) | |
| | ) | |
| _____ | ) | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER AND FINAL REPORT AND RECOMMENDATION

Defendant JPMorgan Chase Bank, N.A., ("the Company", "Defendant" or "Chase"), by and through counsel, responds to Plaintiff Myrtha Colette's Objections to the Magistrate Judge's Order and Final Report and Recommendation ("Plaintiff's Objections"). For the reasons set forth below, Chase respectfully requests that the Court reject Plaintiff's Objections and adopt the portion of the Magistrate Judge's Order and Final Report and Recommendation ("R&R") [Doc. 82] recommending summary judgment and dismissal of Plaintiff's ADA retaliation claim. Plaintiff does not object to the R&R recommending granting of summary judgment on the other

1

retaliation claims and the ADA failure to accommodate claim.  [Doc. 86, p. 3, n. 1]. Plaintiff objects only to the R&R's recommendations on the ADA retaliation claim.

## I.  ADDITIONAL UNDISPUTED FINDINGS OF FACT

Plaintiff does not object to the following findings of the R&R or dispute the facts below, therefore they are undisputed and should be adopted by the Court:

- Chase coached Plaintiff in September and October of 2013 based on her poor performance; she was placed on a Performance Improvement Plan on October 31, 2013; was observed being rude to customers by James Blackmon, LaDonna Murphy and Denise Horvath; received negative client survey scores; had to be coached on client interactions; received numerous customer complaints, including, but not limited to, on July 10, 2015, August 14, 2015, November 7, 2015, November 10, 2015, December 22, 2015, and December 30, 2015; and was rated as a "Needs Improvement" for Customer Experience in her 2015 Year-End Performance Review. [Doc. 68-1, ¶¶ 101-113].  Her 2016 performance problems were not new.

- On August 23, 2016, Chase delivered a written warning to Plaintiff. The written warning concerned Plaintiff's performance on June 28, 2016. The written warning placed Plaintiff on a restrictions period through October 22, 2016, and she could be terminated at any time if her performance did not meet expectations,

there was no immediate improvement, or other performance issues arose. [Doc. 82, p. 17].

- The delay between the transaction, its discovery, and the issuance of the written warning was documented and justified. [Doc. 82, p. 45]. The written warning was issued approximately seven weeks after the incident occurred because (1) Natasha Davis had to review the monthly loss report, which she did on a monthly basis [Doc. 68-5, p. 13, ¶ 33; Doc. 56-6, p. 36; Doc. 68-4, p. 38]; (2) the loss had to be discussed with Human Resources for confirmation of appropriate corrective action pursuant to guidelines [Doc. 56-6, pp. 31-32; Doc. 56-4, pp. 80-82]; and (3) Davis was on vacation while specifics related to the transaction were being confirmed and the written warning was not issued until her return. [Doc. 56-6, pp. 31-32].

- On September 7, 2016, Plaintiff reported that she had <u>recently</u> been assigned TCD duties but had a previous back injury which hampered her ability to lift objects. [Doc. 82, p. 43; Doc. 56-6, p. 30].

- On or around September 13, 2016, a customer lodged a complaint with Defendant's executive office in connection with a transaction involving the customer's child. In the complaint, the customer wrote to inform the corporate office of a "gross situation" within the Company. The customer complained that

the way her son was treated was unfathomable. The customer identified two tellers as being involved. [Doc. 82, pp.18-19].

- LaDonna Murphy investigated the customer complaint on or about September 23, 2016 - she determined that Plaintiff was primarily at fault and had committed a company policy violation by acting rudely to the customer's family. [Doc. 82, p.19].

- On September 15, 2016, Murphy and Nikole Jones addressed a vault overage with Plaintiff. Chase determined Plaintiff had committed a policy violation as the back-up vault custodian when she failed to ship out cash at the branch. [Doc. 82, pp.19-20].

- On September 22, 2016, Plaintiff's physician submitted medical documentation to Chase's Health Services Department ("Health Services") indicating lifting restrictions requiring light duty, limitations on lifting weights exceeding ten pounds, and limitations on her bending and stooping. Health Services relayed Plaintiff's accommodation request to Jones that same day, and Plaintiff immediately was relieved of her TCD duties for the requested two week period. [Doc. 82, p. 21].

- Plaintiff did not identify similar behavior directed at other members of her alleged protected group, systematically better treatment of those outside her protected

group, or any relevant untoward ambiguous statements made towards her. [Doc. 82, p. 45, 50].

Based on the above, the information presented in Chase's Motion for Summary Judgment [Doc. 56], Chase's Reply [Doc. 73], Notice of Objections to Plaintiff's Declaration [Doc. 74], Defendant's Objections to the Magistrate Judge's Final Report and Recommendation [Doc. 87], and this Response, it is clear there is no genuine issue of material fact as to Plaintiff's claim of ADA retaliation and the claim should be dismissed with prejudice.[1]

## II.    ARGUMENTS AND CITATIONS TO AUTHORITY

Many of the arguments advanced in Plaintiff's Objections have been addressed thoroughly in Chase's summary judgment briefings. *See* [Docs. 56, 73, 74, 87]. The District Court should disregard any purported objection that is conclusory, states only a general disagreement, or fails to specifically identify the proposed findings or recommendations to which a party objects. *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 n. 8 (5th Cir. 1982) (en banc) ("Frivolous, conclusive or general objections need not be considered by the district court."), *overruled on other grounds by Douglass v.*

---

[1] Defendant separately addresses in its Objections to the Magistrate Judge's R&R why the ADA disparate treatment claim should be dismissed as well, despite the R&R's recommendation regarding same. [Doc. 87].

*United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). Notwithstanding, Chase addresses Plaintiff's specific objections. Plaintiff asserts the Magistrate Judge erred when he recommended granting summary judgment with regard to Plaintiff's ADA retaliation claim, specifically that (A) Plaintiff's claim failed because of insufficient causation, and (B) Plaintiff failed to establish the legitimate, non-discriminatory reason for her termination was pretext. Defendant asks the District Judge to reject Plaintiff's Objections and dismiss the ADA retaliation claim along with all of Plaintiff's other claims.

**A.    The Magistrate Judge Correctly Determined Defendant Did Not Retaliate Against Plaintiff.**

To establish a prima facie case of ADA retaliation, a Plaintiff much show: "(1) that he engaged in statutorily protected activity; (2) that he suffered an adverse employment action; and (3) a causal link between the protected activity and the adverse action." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998). Plaintiff cannot establish the third prong of her claim.

1.    Plaintiff attempts to manipulate the timeline.

Plaintiff claims she verbally complained to Horvath in June 27, 2016, that she was unable to do the TCD duties.  [Doc. 86, pp. 5-6, 13, 19, 21].[2] She then claims

---

[2] In Plaintiff's EEOC charge, Amended Complaint, written discovery responses and deposition, she was focused on Blackmon as the bad actor.  She opined that

"[i]n or about July and August of 2016" she told Murphy and Jones that her back issues restricted her from being able to perform TCD duties. [Doc. 86, p. 6]. Plaintiff is very vague and conveniently extrapolates general dates in order to anchor her back pain disclosure back to late June 2016 – she asserts broad declaratory statements and a quote from her deposition, that when placed in context with the rest of her testimony shows that *Plaintiff did not disclose her alleged inability to perform TCD duties until after she had been placed on a written warning.* [Doc. 86, pp. 6, 13; Doc. 70-2, p. 3 ¶¶ 3-4]; *but see* [Doc. 73-7, 119:24-120:13] ("Natasha [Davis] gave me the - - told me and then told me that they're going to put me on warning. *And right after that* I was telling them that I'm not able to do the TCD and at that

---

Blackmon continued to influence Murphy and Jones even after he went on leave. Then, after she started working with a new attorney, in her summary judgment response, she presented new alleged complaints made to Jones and Murphy in July 2016 [Doc. 68, pp. 9, 12] and now, in Plaintiff's Objections, she is asserting that she made those same complaints "in or about July and August of 2016" [Doc. 68, p. 6]. With the benefit of having reviewed and analyzed Chase's arguments and the Magistrate Judge's analysis, Plaintiff and her attorney have tried to completely change Plaintiff's allegations and the timeline. From targeting Blackmon, they are now targeting Davis, Jones, Horvath, and Murphy—which was never the argument Plaintiff made before summary judgment briefing. The inconsistencies from document to document prove that her timeline is changing based on the information presented to her. It also seems highly suspect and illogical to argue that five different individuals over the course of Plaintiff's employment had it out for her based on her alleged back pain and that they all played a part in this retaliatory scheme to terminate Plaintiff.

time we didn't have a manager . . . And I also told Nikki [Jones] and LaDonna [Murphy] . . . And because we didn't have a manager at that time, *because Natasha was away or training or whatever*, then I wasn't sure who to go to. Whoever came to the branch I addressed them, that *I'm not able to do the TCD because of my back*.") (emphasis added).

The Magistrate Judge found Plaintiff made a complaint to Horvath about TCD duties. [Doc. 82, p. 16]. Plaintiff was *not* performing TCD duties at the time she met with Horvath in June 2016. Plaintiff was simply airing all of her grievances with Blackmon, as she was asked to do. Plaintiff unequivocally testified that she had only been reassigned TCD duties after William Allen and Randall Hersey left the branch. [Doc. 73-7, 82:5-83:12] ("All I know, both of them left and then I end up having [the TCD duties] again."). Randall Hersey submitted his resignation notice on August 30, 2016, and TCD duties were not reassigned to Plaintiff until after he left. [Doc. 56-9, ¶11; Doc. 73-7, 83:11-12; Doc. 56-6, p. 3 (Hersey was at the branch on June 27, 2016, and participated in Horvath's investigation)].

Similarly, Plaintiff's attempts to manipulate the timeline in her favor with newly recalled, unsupported facts that she made verbal complaints about TCD duties to Murphy and Jones "in or about July and August of 2016", prior to the issuance of the written warning. [Doc. 86, pp. 6, 13, 19, 21]. As the Magistrate Judge found,

Plaintiff initiated the accommodation procedure on September 7, 2016, when she engaged Jones, Chase's Human Resources Department ("Human Resources"), and Health Services, as is corroborated and confirmed with Plaintiff's deposition testimony and the documented evidence. *See* [Doc. 82, p. 43; Doc. 73-7, 120:13-121:9; Doc. 56-6, p. 30; Doc. 57-1, 9-12]. Plaintiff raised the topic with Jones because she had *recently* been asked to resume the TCD duties (which is in line with the timeline that includes Hersey's resignation). [Doc. 56-6, p. 30]. There is no other evidence that Plaintiff talked to Jones about her back pain before this date, and Plaintiff did not assert this timeline of "facts" in her deposition. Plaintiff claims she complained that she was unable to do TCD duties because of her back to "whoever came into the branch" *after* Natasha Davis left for training.[3] [Doc. 73-7, 120:9-13]. Plaintiff testified Jones asked Plaintiff for a doctor's note, and told her to call Human Resources. [Doc. 73-7, 120:13-18]. While Plaintiff had Human Resources on the phone, she inquired about the August written warning – not because she had a problem with *why* the written warning was issued, but because she believed she should have been afforded a "break". [Doc. 73-7, 120:13-121:9].[4] "When opposing

---

[3] Natasha Davis did not leave the branch until at least September 1, 2016. [Doc. 56-9, 34; Doc. 68-5, p.7, ¶ 2].

[4] In other words, Plaintiff did not call Human Resources to refute her written warning but mentioned it as an afterthought during a call to initiate the accommodation procedure. *See* [Doc. 73-7, 117:13-118:7].

parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Plaintiff claims in her Objections that Murphy found out about the accommodation request on September 22, 2016, and only then decided to discipline Plaintiff on September 23, 2016. [Doc. 86, p. 16].[5] She completely ignores that the incidents and policy violations at issue (the customer complaint and the vault overage) occurred on September 13 and 15, respectively, and Murphy had to investigate same before taking corrective action. Murphy investigated the customer complaint on or about September 23, 2016, and the termination decision occurred shortly thereafter. Plaintiff cannot inject an accommodation discussion into the timeline (a discussion that had been initiated before she engaged in the two disciplinary incidents) and then claim the disciplinary processes in action should

---

[5] Plaintiff contradicts herself as she also states that she told Murphy in "July and August" about her back pain and alleged TCD related requests. According to Plaintiff, did Murphy know about the back pain in July, August or September? Plaintiff also newly claims that Jones only approved the August written warning after finding out about Plaintiff's back pains. [Doc. 86, p. 13]. Plaintiff keeps trying to distort the timeline and changes her story to fit her needs as she here wants it to appear as if Murphy would not have written up Plaintiff if she had not found out about the accommodation request on September 22.

cease.  Murphy recommended the termination based on the prior three incidents that are well documented and becoming aware of the alleged September 22 "verified" accommodation request did not change the Company's course of action.  An ADA retaliation claim is not intended to be a shield against legitimate non-retaliatory employment actions.

> ## 2.    Plaintiff cannot establish causation.

The Magistrate Judge found Plaintiff initiated the accommodation process on September 7, 2016. [Doc. 82, p. 43]. Nonetheless, Plaintiff tries to have the Court believe there are multiple statutorily protected activities associated with a single request for accommodation – a notion which was flatly rejected by the Magistrate Judge. [Doc. 86, pp. 13-14; Doc. 82, p. 44]. Additionally, Plaintiff completely ignores another flaw in her argument – the action on September 22, 2016 was taken by Health Services, not Plaintiff, so it is unclear how she undertook any type of protected activity on that date. [Doc. 82, p. 44]. The evidence shows the Jones was aware of the Health Services request on September 7, 2016. [Doc. 86, 18].[6] As the

---

[6] And while Plaintiff has not yet identified how or why these decision makers would have any type of discriminatory animus towards Plaintiff and her alleged disability, Plaintiff's restrictions were identified as "temporary" [Doc. 57-1, 10] and the light duty restrictions were only set to last for two weeks. [Doc. 57-1, 11].  In the grand scheme of things, it seems highly unlikely that an experienced branch manager of a large and sophisticated international company would choose to terminate an employee over a 2 week restriction that only slightly changed the branch's work

Magistrate Judge properly found, there were intervening, independent events that broke the causal connection between Plaintiff's initiation of the accommodations process on September 7, 2016 and her termination on September 30, 2016. [Doc. 82, p. 44].

      a.     The Magistrate Judge correctly found that Plaintiff's causation was broken by intervening events.

A plaintiff may show causation between the protected expression and an adverse action by showing the two were in close temporal proximity – however, if a plaintiff has failed to meet performance standards set by the employer, intervening causes can break the causal connection (if any). *Hankins v. AirTran Airways, Inc.*, 237 F.App'x 513, 520, 521 (11th Cir. 2007) *See Henderson v. FedEx Express*, 442 F.App'x 502, 506 (11th Cir. 2011) (holding while close temporal proximity between protected activity and adverse action may be sufficient to show that the two were not wholly unrelated, intervening acts of misconduct can break any causal link between protected conduct and adverse employment action). Plaintiff argues that the causal connection required to establish her *prima facie* case was not broken by intervening events, and attempts to differentiate the cases cited by the Magistrate Judge, *Spence v. Panasonic Copier Co.*, 46 F. Supp. 2d 1340, 1349 (N.D.Ga. 1999), and *Wofsy v.*

_____

flow—TCD duties were performed about once a week and the branch was barely affected by the temporary restrictions. [Doc. 73-8, 86:17-25; Doc. 57-1, pp. 10-11].

*Palmshores Retirement Community*, 285 F.App'x 631, 634-35 (11th Cir. 2008).

Plaintiff argues *Spence* and *Wofsy* are distinguishable because in those cases the plaintiffs received warnings about their performance <u>before</u> engaging in protected activity.  46 F. Supp. 2d at 1349; 285 F.App'x at 635.[7]  Plaintiff tries to argue, in contrast, that she had no disciplinary actions prior to her protected activity.  In fact,

---

[7] Plaintiff also points out that the plaintiff in *Wofsy* did not have a disability under the ADA.  Chase reserved its argument on this point, and only presumed for purposes of its summary judgment motion that Plaintiff had a disability when she requested her accommodation on September 7, 2016. Plaintiff identifies her disability as "herniated disc". [Doc. 5, ¶ 1]. However, Plaintiff's medical documentation notably reveals "No disk herniation is evident". [Doc. 57-1, 6]. *See Vaughan v. World Changers Church Int'l, Inc.*, No. 1:13–CV–0746–AT, 2014 WL 4978439, at *10 (N.D. Ga. Sept. 16, 2014) (a plaintiff who was diagnosed with cervical sprain/strain, a lumbar sprain/strain, muscle spasms, and an ankle sprain who had temporary medical restrictions did not present sufficient evidence to establish that she had a disability under the ADA); *see also Cappetta v. N. Fulton Eye Ctr.*, No. 1:15-CV-3412-LMM-JSA, 2017 WL 5197207, at *23 (N.D. Ga. Feb. 1, 2017), *report and recommendation adopted sub nom. Capetta v. N. Fulton Eye Ctr.*, No. 1:15-CV-3412-LMM-JSA, 2017 WL 5443877 (N.D. Ga. Mar. 7, 2017), *aff'd sub nom. Cappetta v. N. Fulton Eye Ctr.*, 713 F. App'x 940 (11th Cir. 2017) ("[T]he plaintiff's unspecific testimony regarding her disability 'standing alone is not enough to overcome contradictory medical documentation and a general absence of supporting evidence' . . .") (internal quotations omitted). District courts have concluded that herniated discs do not generally qualify as a disability within the meaning of the ADA. *See, e.g.*, *Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 460 (S.D.N.Y. 2007) (finding that a plaintiff with a herniated disc was not disabled within the meaning of the ADA, even where the plaintiff also had a brain cyst and a right ankle sprain); *Anderson v. Univ. Orthopaedic*, No. 16-CV-7311 (CM), 2016 WL 10567969, at *3 (S.D.N.Y. Dec. 23, 2016) (finding Plaintiff's assertions that he suffered from herniated discs and had difficulty standing for his entire work shift inadequate).

in this case, Plaintiff too received her written warning <u>before</u> she engaged in statutorily protected conduct. She was written up on August 23, 2016, for performance issues that occurred on June 28, 2016, and she did not start an accommodation dialogue until September 7, 2016. [Doc. 56-4, pp.78-79; Doc. 82, p.43]. Further, despite Plaintiff's assertion that there was no record of performance deficiencies or warnings prior to Plaintiff's protected conduct, the documents and Plaintiff's own admissions prove otherwise.[8]

Plaintiff does not dispute that the customer complaint and cash vault incidents came after she initiated the accommodation procedure on September 7, 2016, nor does she dispute that the incidents occurred. [Doc. 86, p. 16]. Instead, Plaintiff tries to confuse the timeline by claiming she initiated the accommodation procedure on September 7 but that it did not become "official" until September 22, when Health Services received and processed information from her doctor. She tries to claim the

---

[8] In addition to the August 2016 written warning, Plaintiff was placed on a Performance Improvement Plan in October 2013 for deficiencies in her customer service skills; Blackmon, Murphy, and Horvath directly observed Plaintiff being rude to customers; Plaintiff had to be coached numerous times about her tone and client interactions; Plaintiff acknowledged she had numerous customer complaints, including but not limited to, on July 10, 2015, August 14, 2015, November 7, 2015, December 22, 2015, and December 30, 2015; and Plaintiff was rated as a "Needs Improvement" in her 2015 year-end review for Customer Experience. [Doc. 73-8, 106:9-13, 119:20-23, 120:9-16; Doc. 73-9, 117:8-19, 114:20-22; Doc. 56-8, ¶6; Doc. 56-4, pp. 77, 78-79, 84].

Company knew about the accommodation request on September 7 but that the further processing of that request on September 22 somehow provides fresh protected activity so that the September 23 actions by Murphy appear retaliatory. Plaintiff cannot massage the timeline in order to negate her intervening performance failures. Each discussion in the ADA interactive dialogue does not constitute a new protected action, and Plaintiff has not produced any legal authority to support such an argument. Jones was aware of the accommodations request on September 7, 2016, which she subsequently approved on September 22, 2016, after the Company received appropriate documentation. [Doc. 73-7, 313:23-25; Doc. 57-1, pp. 9-12].

The Magistrate Judge correctly found - and Plaintiff does not dispute - that Plaintiff violated Chase policy on or around September 13, 2016, during the interaction Plaintiff had with a customer's child. [Doc. 82, p. 19]. The Magistrate Judge also correctly found Plaintiff violated Chase policy again on September 15, 2016, when she failed to recognize and perform duties that had been assigned to her as back up vault custodian. [Doc. 82, pp. 19-20]. The two policy violations conclusively show there were intervening causes that broke any causal link that Plaintiff might have set into motion with her request for accommodation on September 7, 2016. [Doc. 82, pp. 43-44].

Despite the Magistrate Judge's findings that Plaintiff had violated policy in relation to the customer complaint and the cash vault incident, Plaintiff attempts to mislead the Court by arguing that Plaintiff was not the subject of any formal discipline and that her violations of policy were not considered severe. [Doc. 86, p. 16]. There is absolutely no evidence that Murphy did not believe the violations were severe until she learned of the accommodation request—Plaintiff completely speculates and dreams up this version of events with no evidence to support those contentions. The Magistrate Judge found that Murphy and Jones verbally addressed and coached Plaintiff about the vault cash overage. [Doc. 82, p. 19]. Additionally, despite Plaintiff's unsupported conclusions that her policy violation stemming from the executive complaint was not severe, the eight pages of internal correspondence with continuing requests for updates and responses shows otherwise. [Doc. 56-6, pp. 14-22].

Assuming *arguendo* that the Court accepts Plaintiff's legally and factually unsupported argument that Plaintiff made a subsequent request for accommodation on September 22, 2016, this would still be insufficient to create the causal link necessary to establish a prima facie case for retaliation. Murphy was tasked with investigating the customer complaint on or around September 20, 2016. [Doc. 56-6, pp. 18-19]. Murphy conducted her investigation on or around September 23, 2016.

[Doc. 56-6, 13]. ("On 9/23, one mgr came in LaDonna, she sat down with Agnes first. LaDonna asked me about the customer complaint. I did not say it is not my problem. LaDonna said someone witnessed that I said that."). Thus, even if the Court were to consider that the September 22, 2016 "verified" accommodation request was separate protected conduct, the results from Murphy's September 23, 2016, investigation, which was initiated on September 20, prior to the "verified" request, effectively cut off any causal link necessary for Plaintiff's *prima facie* case. After this investigation, Murphy confirmed she had spoken with Plaintiff and others and that there would be corrective action forthcoming, and that she had reached out to Human Resources to advise on next steps because Plaintiff was on a written warning. [Doc. 56-6, pp. 16-17].

This Court has previously recognized that even in situations where only one day has lapsed between statutorily protected activity and termination, there can be an absence of causation under similar circumstances. *See Robinson v. AFA Serv. Corp.*, 870 F.Supp. 1077, 1084 (N.D.Ga. 1994). This case is no different – regardless of whether Plaintiff's protected conduct occurred on September 7, 2016, or September 22, 2016, preexisting and intervening causes cut off the causal link necessary to establish a prima facie claim of retaliation.

Further, Plaintiff does not object to the Magistrate Judge's findings and conclusion that Plaintiff failed to establish a "convincing mosaic" of circumstantial evidence as it relates to her retaliation claim. [Doc. 82, pp. 44-45; *see generally* Doc. 86]. The Magistrate Judge found Plaintiff's argument to be unpersuasive because she had not identified either similar behavior directed at other members of her protected group or systematically better treatment of those outside her protected group, and did not identify any untoward or ambiguous statements. [Doc. 82, p. 45].

**B.    The Magistrate Judge Correctly Found Plaintiff Could Not Rebut Chase's Legitimate Non-Retaliatory Reason for Termination.**

To establish pretext at the summary judgment stage, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). "[A] reason is not pretext for [retaliation] 'unless it is shown *both* that the reason was false, *and* that [retaliation] was the real reason." *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020).

1.    Plaintiff failed to establish pretext.

The Magistrate Judge correctly found that Plaintiff's pretext arguments were unconvincing and insufficient to create a genuine issue of material fact. [Doc. 82, p.

46]. Plaintiff argues that all of the reasons the Magistrate Judge recommended denial of summary judgement on Plaintiff's disparate treatment claim should apply with equal force to the retaliation claim. [Doc. 86, p. 21]. As thoroughly briefed in Defendant's Objections to the Magistrate Judge's Final Report and Recommendation, Plaintiff was issued the August written warning because she failed to vet and verify identification to make sure the individual was indeed the account holder prior to cashing a check, and the system showed she had conducted a local teller override. [Doc. 87, p. 5; Doc. 56-1, ¶ 24; Doc. 56-6, 36; Doc. 73-7, 151:2-13; 155:16-156:14]. It is undisputed that the individual cashing the fraudulent check was not the account holder. [Doc. 56 -1, ¶¶ 17-19; Doc. 56-6, 34-35].[9] Plaintiff cannot merely quarrel with the wisdom of the employer's reason, but "must meet that reason head on and rebut it." *Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir.2000).

---

[9] Plaintiff attempts to divert the Court's focus with a red herring – the timing of a fraud alert; however, it is undisputed that Plaintiff conducted an account override of an alert which was identified as the "Control Point Failure" and further violated policy when she failed to properly verify the identification of the individual presenting the fraudulent check. [Doc. 86, p. 20; Doc. 56-6, at 36; Doc. 56-1, ¶ 24; Doc. 73-7, 151:2-13; 155:16-156:14]. Even if a fraud alert had not been placed prior to the transaction date, the evidence shows Plaintiff did not properly verify the identity of the person who presented the fraudulent check which led to $4,530.00 loss to the branch.

The Magistrate Judge correctly found that the peculiarities of timing could be explained by the record evidence. [Doc. 82, p. 45]. The Magistrate Judge found that while Plaintiff received her written warning on or around August 23, 2016 for an incident that occurred on or around June 28, 2016, the delay was explained by the record. [Doc. 82, p. 45]. Documentary and testimonial evidence indicated Davis checked the branch loss report once a month, the loss had to be discussed with Human Resources for confirmation of appropriate corrective action, the written warning was not issued when the loss was discovered because the date of the alleged transaction was originally given incorrectly over the phone, and the warning needed to be confirmed while several parties were on vacation. [Doc. 68-5, p. 13, ¶ 33; Doc. 56-6, pp. 31-32; Doc. 56-4, pp. 80-82; Doc. 56-6, pp. 31-32; Doc. 82, p. 45]. The Magistrate Judge correctly noted that Plaintiff's Amended Complaint had focused almost entirely on the alleged misconduct of former branch manager, Blackmon and rejected Plaintiff's argument that it was "highly suspect" that Plaintiff was only disciplined after Murphy and Jones assumed control of the branch. [Doc. 82, p. 45].[10]

---

[10] This is the theme of the case-- Plaintiff's Amended Complaint, deposition testimony and discovery responses all focused entirely on Blackmon as the bad actor. Somehow, after it was established that he was not at the branch during the final 3 disciplinary events, she tries to change her theory and establish an entirely new and fabricated timeline involving Murphy and Jones.

In her Objections, Plaintiff does not rebut Chase's legitimate, non-discriminatory reasons for termination. In fact, Plaintiff does not address any of the arguments that the Magistrate Judge found unconvincing with regard to pretext, but simply and unconvincingly urges the Court to apply the same logic that was applied to the ADA disparate treatment claim to Plaintiff's retaliation claim. Plaintiff merely states a "general disagreement" with the result of the analysis and does not object to the specific findings that led to the Magistrate Judge's findings. *See Moore*, 847 F.2d at 548. "That a plaintiff's evidence suggests that an employment decision was unwise or unfair or inaccurate does not alone suggest that it was discriminatory or retaliatory." *Frazier v. Sec'y, Dep't of Health and Human Services*, 710 F.App'x 684, 871 (11th Cir. 2018). Certainly, even if a plaintiff establishes the instances themselves are false or exaggerated, that alone is insufficient to show pretext "without calling into question [the decision maker's] sincere belief that they occurred." *Id.* (citing *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005). Plaintiff has not produced a shred of evidence that Murphy, the interim branch manager who recommended Plaintiff's termination, did not sincerely believe the information she received as it related to the written warning or the facts she relied

upon in the investigation of the September 13 and September 15 policy violations.[11]

Murphy was not involved in the issuance of the August written warning and there is

no evidence that she had reason to believe the written warning was inaccurately or

improperly issued. Plaintiff knows she cannot establish pretext and reasserts her

misplaced argument that temporal proximity creates an issue of causation, however,

while close temporal proximity between the protected conduct and the adverse

employment action can establish pretext when coupled with other evidence,

temporal proximity alone is insufficient. *See Johnson v. Miami-Dade Cty*, 948 F.3d

1318, 1328 (11th Cir. 2020). Further, as briefed, any causal link was broken due to

intervening causes and independent events – all which were attributable to Plaintiff's

deficient performance.

> 2. The Magistrate Judge correctly found that Plaintiff was not able to prove she was terminated "because of" her statutorily protected activity.

Plaintiff asserts that the Magistrate Judge incorrectly weighed conflicting

evidence against Plaintiff when making the determination that there was no "but-

for" cause for her termination because Chase granted Plaintiff's *temporary*, *two week*

---

[11] Whether an employee actually engaged in the misconduct that was reported to the decision maker is irrelevant to the issue of whether the decision maker believed that the employee had done wrong. *See Elrod v. Sears Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991).

light duty restrictions. [Doc. 86, p. 19]. Plaintiff's argument falls flat because she has not presented any credible conflicting evidence – it is undisputed that Plaintiff's request for accommodation was granted immediately. [Doc. 68-1, ¶ 149]. Plaintiff seemingly tries to assert that Horvath, Murphy, and Jones had long been aware of Plaintiff's difficulty performing TCD duties, but as addressed, there is no credible evidence to support this assertion. [Doc.86, p. 19; Doc. 73-7: 82:5-83:12, 119:22-120:18; Doc. 56-6, p. 3]. The "but-for" standard, the Eleventh Circuit recognized, "requires a closer link that merely proximate causation; it requires that the prescribed animus have a determinative influence on the employer's adverse decision." *Sims v. MVM, Inc.*, 704 F. 3d 1327, 1335-36 (11th Cir. 2013). The Eleventh Circuit recognized the circuit split regarding whether the "but-for" causation standard applies at the *prima facie* stage or the pretext stage of the summary judgment analysis, and recent decisions within this Circuit reflect application of the "but-for" causation standard at the pretext stage of the summary judgment examination. *See Gogel*, 967 F.3d, at 1136, n. 13; *Jefferson v. Sewon Am., Inc*., 891 F.3d 911, 925; *Frazier*, 710 F.App'x at 874 (finding the plaintiff's actions negated any strong inference of causation that could be drawn from temporal proximity alone thus concluding the protected activity was not the "but-for" cause of termination.)

Plaintiff has failed to provide any evidence that but-for her engagement in the accommodations process, Chase would not have terminated her employment and relies solely on temporal proximity. Chase did not terminate Plaintiff when she engaged in the accommodations process on September 7, 2016. To the contrary, once the required documentation was submitted by her healthcare provider, Plaintiff's temporary light duty restriction was immediately approved. It was only after Plaintiff engaged in successive policy violations while on a written warning that Murphy made the recommendation for termination. Further, Plaintiff has not produced any evidence that Murphy did not sincerely believe the information she received as it related to the written warning or the facts she relied upon in the investigation of the two undisputed September 2016 policy violations. Plaintiff failed to identify weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Chase's legitimate reasons for its actions and failed meet these reasons head on or rebut them. Accordingly, Plaintiff has failed to establish that she was terminated because of her protected activity.

## III.   CONCLUSION

For the reasons set forth herein, Chase respectfully requests that the Court sustain the portion of Magistrate Judge Baverman's R&R that correctly found that Chase is entitled to summary judgment on Plaintiff's claim for retaliation under the

ADA,. Chase further respectfully requests that the Court dismiss Plaintiff's Complaint and all amendments thereto in their entirety with prejudice.

Respectfully submitted, this 11th day of September, 2020.

> */s/ Gregory Y. Shin*
> Deepa N. Subramanian
> Georgia Bar No. 278625
> Gregory Y. Shin
> Georgia Bar No. 446452
> Ogletree, Deakins, Nash, Smoak & Stewart
> One Ninety One Peachtree Tower
> 191 Peachtree Street, N.W. – Suite 4800
> Atlanta, GA  30303
> Telephone:  (404) 881-1300
> Fax:  (404) 870-1732
> deepa.subramanian@ogletreedeakins.com
> gregory.shin@ogletreedeakins.com
>
> Attorneys for JPMorgan Chase Bank, N.A.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **MYRTHA COLETTE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION FILE** |
| **v.** | ) | |
| | ) | **NO. 1:18-CV-05865-JPB-AJB** |
| **JPMORGAN CHASE BANK, N.A.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**CERTIFICATE OF SERVICE AND COMPLIANCE**

I hereby certify that on September 11, 2020, a true copy of the foregoing

**DEFENDANT'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE**

**MAGISTRATE JUDGE'S ORDER AND FINAL REPORT AND**

**RECOMMENDATION,** which was prepared using Times New Roman 14 point

font in accordance with Local Rule 7.1D, was filed via the Court's CM/ECF system

which will automatically serve a copy of same via electronic mail upon the following

counsel of record:

Benjamin A. Stark
Michael S. Wilensky
Barrett & Farahany

*/s/ Gregory Y. Shin*