UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MYRTHA COLETTE,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | CIVIL ACTION NO.<br>1:18-CV-05865-JPB |

# **ORDER**

This matter comes before the Court on the Magistrate Judge's Final Report and Recommendation [Doc. 82]. This Court finds as follows:

FACTS AND PROCEDURAL HISTORY

This action arises from Myrtha Colette's ("Plaintiff") employment with JP Morgan Chase Bank, N.A. ("Defendant"). Plaintiff began working for Defendant in 1984. [Doc. 73-1, pp. 1-2.] Most recently, from July 2013 until September 30, 2016, Plaintiff worked as a senior teller with Defendant at Defendant's Snellville, Georgia location. [Doc. 68-1, p. 2]. During her tenure as an employee, Plaintiff was consistently rated as meeting expectations, despite being placed on a performance improvement plan in October 2013. [Doc. 73-1, pp. 3-4]. Plaintiff's last performance review before her termination, dated July 2016, indicated that

Plaintiff "meets expectations" in every category. Id. at 5. The performance review specifically highlighted Plaintiff's ability to show concern for her customers, Plaintiff's dependability and Plaintiff's professionalism. Id.

On June 28, 2016, Plaintiff processed a fraudulent check in the amount of $4,530.00, thus resulting in a loss to Defendant. Plaintiff alleges that she processed the check normally because no fraud alert was in the system. [Doc. 72-1, p. 157]. Plaintiff further contends that two days later, her supervisor told her that because this was her first outage, she did not need to worry about it. Id. at 153. Plaintiff was disciplined for the loss on August 23, 2016. [Doc. 68-1, p. 6]. More specifically, Plaintiff was given a written warning that contained a restriction period through October 22, 2016. Id. at 12. During this restriction period, Plaintiff could receive additional corrective action or be terminated at any time if performance continued to not meet expectations, there was not immediate and sustained improvement or any other performance issues arose. Id.

During Plaintiff's restriction period, a customer complained to Defendant's Executive Office about her son not being allowed to deposit cash in the account she held with her husband in order to clear up an accidental overdraft. [Doc. 73-1, p. 33]. The customer, who had been a bank customer since 2003, stated that she wanted to bring to Defendant's attention a "gross situation within your company"

involving Plaintiff.[1]  [Doc. 56-8, p. 9].  The customer stated that the bank teller "ridiculed" and "laughed at" her son when he tried to make the deposit.  Id. Ultimately, the customer, who indicated that she would take her business elsewhere, stated that "[n]o one, not a poor homeless person or a rich CEO deserves the treatment and mockery that my son received today in one of your branches."  Id. at 10.  The customer complaint was made on September 13, 2016, and Defendant began investigating the complaint on September 20, 2016.  [Doc. 73-1, p. 34].  After the investigation was completed, on September 23, 2016, Plaintiff's supervisor expressed her desire to issue formal corrective action.  Id. at 37.

As part of Plaintiff's job duties, Plaintiff was assigned the role of backup vault custodian.  [Doc. 68-1, p. 13].  It is the vault custodian's job to ensure that cash is maintained in the vault within established limits for each branch.  Id.  In the event a cash surplus exists in the vault, the vault custodian must ship the cash out to minimize risks associated with having cash overages at the branch.  Id. at 14. The backup vault custodian takes over the duties of the vault custodian whenever the primary vault custodian is absent.  Id.  On September 15, 2016, even though the

---

[1] Plaintiff's name was not referenced in the customer complaint.  It is undisputed, however, that Plaintiff was involved in the transaction with the customer.

primary vault custodian was absent, Plaintiff failed to ship excess cash out of the vault, thus resulting in a cash overage. Id. at 16.

In addition to being named the backup vault custodian, Plaintiff was also assigned duties associated with the Teller Cash Dispenser ("TCD"). In either July or August 2016, Plaintiff contends that she told her supervisors that she could not perform the assigned TCD duties because of back pain. [Doc. 72-2, p. 3]. On September 7, 2016, Plaintiff requested an accommodation with Defendant's Health Services department. [Doc. 73-1, p. 20]. Thereafter, on September 22, 2016, Plaintiff's medical provider provided Health Services with medical documentation concerning Plaintiff's restrictions, and the following day, Plaintiff was relieved of her TCD duties pursuant to those restrictions. Id. at 21-22.

On September 30, 2016, Plaintiff's supervisors recommended Plaintiff for termination because Plaintiff had two serious additional policy violations while on a written warning. [Doc. 56-8, p. 6]. The termination was approved the same day, and Plaintiff was fired. Id.

After Plaintiff was fired, she brought suit against Defendant alleging the following causes of action: (1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (2) retaliation in violation of the ADEA; (3) violations of the Americans with Disabilities Act ("ADA"), including

4

discrimination, failure to accommodate and retaliation; (4) national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (5) retaliation in violation of Title VII; and (6) discrimination in violation of 42 U.S.C. § 1981.  [Doc. 5].

Defendant moved for summary judgment on February 28, 2020.  [Doc. 56]. The Magistrate Judge issued his Final Report and Recommendation on August 3, 2020, wherein he recommended granting in part, and denying in part, Defendant's motion.  [Doc. 82].  Specifically, the Magistrate Judge recommended denying summary judgment as to Plaintiff's claim for disparate treatment under the ADA and granting summary judgment as to the remainder of Plaintiff's claims.  Id.

## ANALYSIS

A district judge has broad discretion to accept, reject or modify a magistrate judge's proposed findings and recommendations.  United States v. Raddatz, 447 U.S. 667, 680 (1980).  Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the Report and Recommendation that is the subject of a proper objection on a *de novo* basis and any non-objected-to portion under a "clearly erroneous" standard.  Notably, a party objecting to a recommendation "must specifically identify those findings objected to.  Frivolous, conclusive, or general objections need not be considered by the district court."  Marsden v. Moore, 847 F.2d 1536,

1548 (11th Cir. 1988). It is reasonable to place this burden on the objecting party because "[t]his rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009).

Both parties objected to the Magistrate Judge's Report and Recommendation. [Docs. 86 and 87]. The objections are discussed in detail below.

  1. Plaintiff's Objections

Plaintiff argues that the Magistrate Judge erred in recommending summary judgment as to her ADA retaliation claim. In her retaliation claim, Plaintiff contends that she was terminated from her employment because she requested an accommodation for her TCD duties.

"The ADA prohibits retaliation against an individual for opposing an unlawful practice or making a charge under the ADA." Frazier-White v. Gee, 818 F.3d 1249, 1258 (11th Cir. 2016). A plaintiff must show the following to establish a prima facie case of retaliation: (1) that she engaged in a statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there was a causal link between the two. Id. If a plaintiff shows a prima facie case, "the

burden then shifts to the defendant employer to come forward with legitimate non-discriminatory reasons for its actions that negate the inference of retaliation." Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997). If the defendant provides such a reason, the burden returns to the plaintiff to show that the defendant's proffered reason for the adverse action is pretextual. Gilliard v. Ga. Dep't of Corr., 500 F. App'x 860, 864 (11th Cir. 2012).

Although the standard articulated immediately above is the usual standard for evaluating retaliation claims, it "is not the *sine qua non* for a plaintiff to survive summary judgment." Calvert v. Doe, 648 F. App'x 925, 929 (11th Cir. 2016). In fact, a plaintiff can survive summary judgment if she "presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Id.

The Magistrate Judge determined that Defendant was entitled to summary judgment because Plaintiff could not establish a prima facie case, pretext or a convincing mosaic of circumstantial evidence. [Doc. 82, pp. 37-45]. Assuming, *arguendo*, that Plaintiff established a prima facie case of ADA retaliation, this Court agrees with the Magistrate Judge that Plaintiff cannot show pretext. "Pretext means that the reason given by the employer was not the real reason for the adverse employment decision." Gilliard, 500 F. App'x at 864-65. A reason cannot

be proved to be a pretext for discrimination unless it is shown that the reason was false, and that discrimination was the real reason. Id. at 865. "In this respect, conclusory allegations or unsupported assertions of discrimination, without more, do not raise an inference of pretext where an employer has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions." Id. Importantly, a plaintiff must meet the proffered reason for the adverse action "head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Id. A plaintiff will withstand summary judgment only by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Id.

In this case, Defendant asserted several different reasons for Plaintiff's firing, including the $4,530.00 loss Defendant incurred when Plaintiff cashed a fraudulent check, Plaintiff's poor treatment of a customer and Plaintiff's failure to ship cash out of the vault when she was the backup vault custodian. In Plaintiff's objections, Plaintiff argues that she has shown pretext because she should not have been given a written warning on August 22, 2016. [Doc. 86, p. 21]. Plaintiff does not dispute either the customer complaint or the cash-vault incident, but states that the only reason they were termination-worthy events was because of the August

22, 2016 warning.  Id.  Plaintiff concludes that "[t]ake away the written warning, and Defendant's justification is pretext."  Id.

In this case, Plaintiff argues that she should not have been given the written warning that served as a basis for her termination because a fraud alert was not on the account when she processed the fraudulent check.  Even assuming that some dispute exists as to when the fraud warning was placed on the account or whether the written warning should have been issued, Plaintiff offers no evidence suggesting that her July or August complaint about her back pain was the true reason she was placed on a written warning.  See Fonte v. Lee Mem'l Health Sys., No. 2:19-cv-54-FtM-38NPM, 2020 WL 4596872, at *10 (M.D. Fla. Aug. 11, 2020).  Plaintiff relies heavily on temporal proximity and asserts that because she complained about her back pain in July or August 2016, she received the warning on August 22, 2016.  "While temporal proximity may be evidence of pretext, such evidence alone is insufficient to survive summary judgment."  Mohammed v. Jacksonville Hospitalists, P.A., 712 F. App'x 872, 880 (11th Cir. 2017).  Plaintiff's assertion that the warning was the result of the request for accommodation is pure speculation.  Here, nothing in the record indicates that Plaintiff's request for an accommodation factored into the decision to issue a warning in any way.  Fonte, 2020 WL 4596872, at *10.

Despite the relative close proximity between Plaintiff's protected conduct and her termination, Defendant's evidence—including evidence that Plaintiff was rude to a customer in violation of Defendant's policy and failed to perform her duties as backup vault custodian—negates any strong inference of causation that could be drawn from temporal proximity alone. Importantly, Plaintiff completely fails to address the customer complaint or her failure to perform her duties as the backup custodian. In sum, this Court finds that Plaintiff has not met Defendant's reasons head on, and as stated previously, an "employee cannot succeed by simply quarreling with the wisdom of that reason, or showing that the decision was based on erroneous facts." See Snowden v. City of Daphne, 283 F. App'x 693, 695 (11th Cir. 2008).

Because Plaintiff has not demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence," this Court agrees with the Magistrate Judge's conclusion that Plaintiff cannot show pretext. See Gilliard, 500 F. App'x at 865. This Court further agrees with the Magistrate Judge that for the same reasons Plaintiff failed to offer evidence establishing pretext under the burden shifting framework, she has also failed to establish a convincing mosaic of circumstantial evidence from which

the jury could infer intentional discrimination. Accordingly, Plaintiff's objections are **OVERRULED**.

2. Defendant's Objections

Defendant argues that the Magistrate Judge erred in recommending denial of its Motion for Summary Judgment as to Plaintiff's disparate treatment claim under the ADA. "Disparate treatment involves discriminatory animus or intent and occurs when a disabled individual is treated differently than a non-disabled or less disabled individual because of disability." Porterfield v. Saul, No. 2:17-cv-0939-JEO, 2019 WL 6701974, at *5 (N.D. Ala. Dec. 9, 2019).

Ordinarily, discrimination cases involving circumstantial evidence, like the one here, are evaluated under the McDonnell-Douglas burden-shifting framework.[2] Sometimes, however, they are resolved under a different standard when a plaintiff is unable to satisfy the framework. A plaintiff "will always survive summary judgment if [she] presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional

---

[2] Neither party argues that Plaintiff can satisfy the traditional framework.

11

discrimination by the decisionmaker.'" Id. A convincing mosaic may be shown by evidence that demonstrates: (1) suspicious timing, ambiguous statements and other bits and pieces from which an inference of discriminatory intent might be drawn; (2) systematically better treatment of similarly situated employees; and (3) that the employer's justification is pretextual. Hill v. Houchens Food Grp., Inc., No. 1:19-cv-103-KD-C, 2020 WL 2750366, at *11 (S.D. Ala. May 27, 2020). Importantly, when proceeding under this alternate theory for liability, the evidence presented must be sufficient enough to overcome the lack of comparator evidence. Id.

In this case, Plaintiff alleges that she was terminated from her employment because of her disability. Plaintiff contends that this claim survives summary judgment because she presented a convincing mosaic of circumstantial evidence to show intentional discrimination. Plaintiff, relying on suspicious timing, essentially argues that because she complained about her disability in July or August, she was wrongfully disciplined on August 22, 2020. She further argues that because her doctor sent medical records to support her accommodation request on September 22, 2020, Plaintiff's supervisor chose to discipline her for the customer complaint.

Just as this evidence was insufficient to establish pretext, it also does not give rise to an inference that Plaintiff was terminated based on her disability. See

Mojica v. Fla. Dep't of Revenue, 704 F. App'x 834, 837 (11th Cir. 2017). Plaintiff failed to present enough circumstantial evidence to show that the true reason she was fired is because she was disabled. Here, Plaintiff has presented little more than personal speculation to show that her supervisors considered her disability when deciding to terminate her employment or issue the written warning on August 22, 2016. Plaintiff has not shown evidence of ambiguous statements or other bits and pieces from which an inference of discriminatory intent might be drawn. Plaintiff also has not shown systematically better treatment of similarly situated employees or that the employer's justification for the termination was pretextual.

The Magistrate Judge determined that Plaintiff's termination was the direct result of the August 22, 2016 written warning regarding the policy exception loss. [Doc. 82, p. 50]. This Court disagrees. The evidence showed that Plaintiff was terminated not only for the policy exception loss, but because she treated a customer poorly and failed to perform her duties as the backup vault custodian. Furthermore, even though an issue exists as to whether the $4,530.00 loss was a policy exception loss or a policy followed loss, there is simply no evidence that Defendant falsely manufactured the fraud alert for the purpose of imposing discipline on Plaintiff to punish her for being disabled. Plaintiff also has not

shown that she was disciplined for the backup vault incident or the customer complaint because of her disability. Ultimately, this Court finds that Plaintiff has not shown a convincing mosaic of circumstantial evidence sufficient to show that her termination was based on her disability, and therefore Defendant's objection is **SUSTAINED**. This Court finds that Defendant is entitled to summary judgment as to the disparate treatment claim.

## CONCLUSION

After reviewing the entirety of the Final Report and Recommendation and considering the parties' objections, the Final Report and Recommendation is **ADOPTED IN PART** as the order of this Court. For the reasons stated by the Magistrate Judge and for the reasons stated herein, Defendant's Motion for Summary Judgment [Doc. 56] is **GRANTED**. The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 22nd day of September, 2020.

J. P. BOULEE
United States District Judge